ELNORA DAVIS, ET AL. *v.* A. DAVIS' ADMR.

[Abstract Kentucky Law Reporter, Vol. 5—857.]

**Want of Consideration.**

A note given for purchase-money of land is given without consideration when the seller has no title or interest in the land.

**Statute of Limitations.**

Where fraud is not discovered until 1877 in procuring the execution of a note, although more than five years may have elapsed from the date of the first payment made on the note, still the statute of limitations will not avail as a defense.

**Voluntary Gift to Wife.**

Where a husband has not taken possession of his wife's money but has borrowed money from her to invest in land, agreeing to repay her out of the sale of the land, and does so when he makes the sale, such payment can not be said to have been a voluntary gift to her or a payment to her for the purpose of hindering, delaying or defrauding his creditors, especially where the whole transaction was in entire good faith.

APPEAL FROM UNION CIRCUIT COURT.

April 1, 1884.

OPINION BY JUDGE LEWIS:

This action was brought April 26, 1877, by the administrator with the will annexed of Abner Davis, deceased, to settle his estate as provided in Civ. Code 1876, title 10, ch. 3, and from the judg-

ment rendered Elnora Davis, widow and sole devisee, and Haskins & Long, creditors, have respectively appealed.

Two errors are assigned by Elnora Davis: 1. That the court improperly overruled the exceptions to the master commissioner's report allowing the claim filed by Anthony's heirs for $350 and interest. 2. That the proceeds of seventy-five acres of land sold by the testator to Daniel Parrish were improperly adjudged to belong to the estate and not to her. Haskins & Long assign as error so much of the judgment as disallows and dismisses absolutely their claim against the estate for $350 and $150 interest.

As to the claim filed in the name of Anthony Lewis but transferred to Haskins & Long, it appears that in an action of *E. F. Davis' Admr. v. G. A. Lewis* a judgment was rendered subjecting a tract of land containing two hundred acres previously purchased by G. A. Lewis to the payment of one of the notes given by him in payment therefor, and at the commissioner's sale thereof, one S. A. Davis, son of Abner Davis, became the purchaser at the price of $651.87, which was the amount of the judgment.

G. A. Lewis having died between the date of the judgment and the sale under it his father, Anthony Lewis, who resided in a distant county from the one in which the judgment was rendered, agreed to and did pay to S. A. Davis the amount of his bid in consideration of the transfer of it to the widow and children of his deceased son, which was done. But as stated by Anthony Lewis in his pleading and also satisfactorily proved, Albert Davis then represented to him that the legal title to the land was in him, that the commissioner had no right to convey it, and that he would not convey it to the widow and children of G. A. Lewis unless he, Anthony Lewis, would pay him $350 in addition to the $650 he had agreed to pay S. A. Davis. Induced, as he says, by these representations he thereupon gave his note dated June 11, 1870, to Abner Davis for $350, to be paid so soon as he caused to be made to him a commissioner's deed for the land.

Though there is some evidence that S. A. Davis purchased the land at less than its value, he readily agreed to take from Anthony Davis the amount of his bid and it was then paid to him. It does not appear that Abner Davis paid to S. A. Davis any part of the $350, or that the latter was in any way connected with or influenced by the transaction between his father and Anthony Lewis.

In fact it is clear that the only consideration for the note was the supposed title Abner. Davis had for the land and his agreement to cause the commissioner to make the deed, which he would have been required to do by virtue of the transfer from .S. A. Davis. The evidence satisfactorily shows that Abner Davis did not have any title to the land at the time the note was given, nor power to permit the conveyance by the commissioner to S. A. Davis or to Lewis after the transfer of the bid to him, and his representations to Anthony Lewis were therefore untrue.

April 5, 1871, $65 were paid on the note and April 2, 1872, the balance was paid. The amount so paid and interest was adjudged by the court to be repaid out of the estate of Abner Davis to Haskins & Long, assignees of Anthony Lewis. The widow and devisee of Abner Davis contends that the consideration of the note was the influence used by Abner Davis to induce his son, S. A. Davis, to transfer his bid to him. But this defense is not sustained by the proof nor is it consistent with the writing.

The note according to the evidence was without consideration, and Anthony Lewis was induced to execute and to pay it by the representations of Abner Davis, which must be regarded as fraudulent. It is alleged and satisfactorily shown that the fraud was not discovered until 1877, so that, although more than five years may have elapsed from the date of the first payment made on the note to the time the claim was proved and filed, still the statutes of limitation do not avail as a defense. The court did not therefore err in overruling the exceptions to the claim.

November 10, 1874, Abner Davis sold and conveyed to Daniel Powell a tract of land, seventy-five acres, for the consideration of $900, for which several notes were given payable to his wife, appellant, Elnora Davis. At the time the judgment appealed from was rendered some of these notes had been repaid to her and others remained unpaid. The court decided that the entire proceeds of the land belonged to the estate of Abner Davis, deceased, and rendered judgment in favor of the administrator against appellant for the amount of the notes collected by her and against Powell for the balance of them unpaid.

In his amended petition filed July 14, 1880, more than three years after the action was commenced by him, and nearly six years after the land was sold to Daniel Powell and the notes therefor executed

by him to appellant, Elnora Davis, the administrator, Lambert, for the first time called in question the transaction, though according to his own testimony he was intimately acquainted with all the parties and must have known from the beginning the notes were executed to appellant. In the amended petition he states in substance that at the time the sale was made to Powell, Abner Davis was indebted to an amount equal to everything he was worth, that appellant did not pay him any consideration for the notes, and the execution of them to her was by Abner Davis intended as a voluntary gift made to cheat, hinder and defraud his creditors.

In her answer appellant denied these allegations and stated that she had a separate estate of considerable amount which never came to the possession of her husband or was claimed by him, but that she loaned him her money under an express agreement he was to pay or secure to her the payment out of the land sold to Powell, and the notes were in pursuance of that agreement made payable to her and she took possession of and thereafter held and claimed them as her own. It appears that some time before the sale to Powell she had sold real estate belonging to her in the state of Maryland for about $4,000. This money her husband seems never to have had possession of or claimed, but it was deposited by her in different amounts and at different times in bank under an agreement with the officers, to which her husband assented, that the deposits were to be to her credit and subject to her order, and from time to time they were checked out by her.

Powell states that at the time he purchased the land Abner Davis first drew the notes payable to himself. But when she reminded him that he had borrowed her money exceeding in amount the $900 for which the land was sold under an agreement to pay her out of the proceeds of that land, and told him she would not sign the deed unless the notes Powell was about to give were made payable to her, he admitted her statements to be true and thereupon wrote the notes making them payable to her, and after she had signed the deed delivered them to her.

It does not in our opinion appear from the record in this case that the transfer of the proceeds of the land by Abner Davis to his wife was in the meaning of the statute either a voluntary gift to her, or was done for the purpose of hindering, delaying or defrauding his creditors. He borrowed of her more than the amount

of the notes, had promised to pay her in the way he did so, and the transaction was manifestly in good faith. It is true, as now appears from the report of the master commissioner, the estate of Abner Davis will not be sufficient to pay all the demands against it, if the Powell notes are adjudged to belong to her. But there is nothing to show that he believed himself to be insolvent when the notes were given. On the contrary he had left after that and held until his death other property subject to execution.

He died April 5, 1875, leaving a will by which, for reasons therein stated, he devised to her all his estate left after the payment of debts. It is hardly probable that he would have done so if he had believed his estate was insolvent, or that if she had believed so she would have accepted the provisions of the will whereby her dower and distributive interest in the estate was relinquished, for if she had renounced the will she as widow would have received nearly as much as the notes amount to. But the lower court, assuming the transfer of the proceeds of the land sold to Powell was fraudulent on the part of her and husband, decided the notes belonged to the estate, so that as the judgment stands she gets nothing.

As the proceeds of the land were transferred by Abner Davis for a valuable consideration and in good faith, the court below erred in adjudging in favor of the administrator upon the issue as to the ownership of the Powell notes. This view accords with the construction of the statute heretofore given by this court. See *Green's Assignee v. Green*, 4 Ky. L. 250.

The claims of Haskins & Long are for services rendered as attorneys, in an action of *Abner Davis v. S. A. Davis*, to enforce a compromise agreement brought and prosecuted to final judgment in the common pleas court, one of them being for services in the lower court for which they charge $300 and the other for services in the Court of Appeals for which they charge $150. In June, 1871, Abner Davis and Haskins & Long made the following contract: "I have employed H. M. Haskins and L. W. Long in the suit of N. C. Powell against me in the Union Circuit Court on a bill of revivor, and to bring and prosecute a suit against Samuel A. Davis to force a settlement with him, and I hereby agree to pay them $500 for their services out of any money or property they may recover or secure for me in either of these suits, and a lien is hereby given them to that extent on the money first, if sufficient,

and on the other property afterwards if the money is not sufficient, and if they should not recover or secure for me anything in these suits, then I agree to pay them a reasonable fee for their services, they conducting the suits and taking all of the depositions and I hereby pledge lot No. 32 in that part of Uniontown, Ky., formerly known as Francisburg, to secure to them the reasonable fee aforesaid.

5 June, 1871.

ABNER DAVIS,

L. W. LONG,

H. M. HASKINS."

Upon that contract is the following indorsement: "In the event that A. Davis shall compromise the suit we have brought against S. A. Davis, and employ a lawyer in Frankfort to attend to the suit of Powell against him in the Court of Appeals and fails to gain same in the Court of Appeals then we agree that the words 'reasonable fee' in the within contract shall mean two hundred dollars.

31 May, 1872.

L. W. LONG,

H. M. HASKINS."

Previous to June 5, 1871, Abner Davis sold to S. A. Davis a tract of land containing about two hundred fifty acres in consideration of the agreement of the latter to pay attorneys' fees and costs amounting to $1,370, which the former had become liable for in previous litigation about the land, and also to pay him rent for a portion of the land as long as he lived. After this sale one N. C. Powell commenced a proceeding in the nature of a bill of revivor of a judgment for the same land rendered some time before that against him and in favor of Abner Davis.

September 2, 1871, Abner Davis brought an action against S. A. Davis alleging his failure to comply with the terms of the sale of the land and seeking judgment for debts in his petition mentioned. May 29, 1872, they entered into a written compromise agreement settling the suit between them, the terms of which were that they were to deliver to each other the accounts and claims, and S. A. Davis agreed to relinquish to Abner Davis his claim to the land, and some notes he had sold a portion of it for, Abner Davis undertaking to pay him all the money he had expended in the suit of Powell against them. At that time the suit of Powell against them

was then pending in the Court of Appeals, but was subsequently determined against Powell. See *Davis v. Powell,* 6 Ky. Opin. 567.

S. A. Davis having refused to comply with the compromise, Abner Davis in September, 1873, brought an action against him to enforce it, which was not determined until 1880, when the judgment of the lower court rendered in 1878 in favor of the administrator was affirmed by the Court of Appeals. *Davis v. Davis' Admr.,* 10 Ky. Opin. 446. There is no transcript of the order of the common pleas court filed, but it is admitted and also proved that when the judgment in that action was rendered in 1878 an order was made allowing Haskins & Long $300 for their services to that time, and upon the return of the case an additional fee of $150 was allowed them for their services in the Court of Appeals, and a lien given on the land to secure both amounts. Under the contract made with Abner Davis in 1871, he paid them on the ——— day of ———, $200, transferred to them on the ——— day of ———, two notes, one on N. C. Powell · for $200 principal and interest amounting at the date of the transfer to $———, and they have filed their claim for $———, the balance, which the court has determined to be a preferred claim.

The question now presented is whether the two sums of $350 and $150 and interest, or any part of them, should be allowed in addition to the $500 agreed to be paid under the contract of June, 1871, and that depends upon the construction to be given to that contract. Part of the fee of $500 by the terms of the contract was made certain, or was to be a reasonable fee, and part was to be paid out of any money or property they might recover or secure for Abner Davis in either the suit with Powell then pending or the one it was then contemplated to bring against S. A. Davis for a settlement.

It is true that by an indorsement on that contract signed by Haskins and Long and dated May 31, 1872, they agreed that, in case he should compromise the suit with S. A. Davis and employ a lawyer in Frankfort to attend to the suit against Powell, a certain or reasonable fee should be fixed at $200 to be paid by him in any event. But that still left $300 of the fee to be paid out of any money or property they might recover or secure for him in either suit, the plain meaning of which was that the payment of the latter sum was contingent upon the money and property being placed in

the possession and under the control of Abner Davis at the termination of the litigation. If such was not the meaning of the contract as interpreted when the indorsement was made on it, why was it not stated explicitly that they were to be entitled to the whole $500 in case the suit with S. A. Davis was compromised and the one with Powell decided in favor of Abner Davis? Certainly if the mere compromise with S. A. Davis then contemplated had been intended by them to have the effect to change to a certain fee that which under the contract was contingent they would have said so.

The compromise with S. A. Davis did not have the effect to secure to Abner Davis, nor did he in virtue of it recover either money or property, because Powell was then seeking to recover the land and if he had done so Abner Davis would not have taken anything under the compromise. Nor when the case was decided against Powell had Abner Davis received or had secured to him either the money or property, for S. A. Davis refused to deliver up the land. So that the suit to enforce the compromise being necessary to recover for or to secure to Abner Davis the money or property out of which Haskins & Long were to be paid, and without the precedent recovery of which they had no right to the conditional fee of $300, it would be a perversion of the contract to now allow them an additional fee of $450, making $950 besides interest, for what they had agreed to do for $500. The allowance by the common pleas court of the claims of Haskins & Long for $350 and $150 and a lien on the land for the payment of them was an ex parte proceeding of which neither the administrator nor appellant, Elnora Davis, sole devisee, had notice.

Two witnesses testified in this case in relation to the proceedings in that court and the value of the services of Haskins & Long in the action of *Abner Davis v. S. A. Davis,* to enforce the compromise. One of them, Berry, states that when the judgment was rendered in that case Haskins & Long claimed $450 for their services but were allowed only $300; that he, Berry, was called on by them as a witness in respect to the value of their services which they fixed at $500, having in view the two suits, viz.: the suit compromised and the one to enforce the compromise. The other witness, James, states that he was likewise called by Haskins & Long in that court; that he testified as to the value of their services, and his statement as to the value of their services was based upon

the idea that nothing had been paid. But in the discussion of the matter at the time it appears that they had already received an amount which caused the difference between the $300 allowed and the amount demanded, which was $450. He further says that he has no recollection of any contract between them and Abner Davis being mentioned at that time, but that he spoke only from what he thought their services were worth in the two cases of *A. Davis v. S. A. Davis,* and in the case of *A. Davis v. S. A. Davis and Powell.*

It thus appears from the testimony of this last witness that in fixing the fee of Haskins & Long at $500 at the time the allowance was made by the common pleas court he had in view the three suits, including the one against Powell. But the services rendered thereafter by them in the Court of Appeals in the case of *Abner Davis v. S. A. Davis,* to enforce the compromise for which they claim $150, were not then considered. In view of the fact that the suit to enforce the compromise may not have been anticipated at the time the contract of 1871 was entered into, and that their services in that case in the Court of Appeals were not included by the witnesses in fixing the value of their services, we are inclined to think they should be allowed the sum of $150 in addition to the $500 contracted for in 1871.

Wherefore the judgment on the appeal of Elnora Davis and cross-appeal of Haskins & Long to the extent indicated is *reversed* and cause remanded for further proceedings consistent with this opinion.

*Taylor & Chapeze, for appellants.*
*Haskins & Long, for appellee.*